IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IRENE A. KUROWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 12 C 1967 |
| ERIC K. SHINSEKI, Secretary, U.S. Department | ) | |
| of Veterans Affairs, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Irene Kurowski alleges that the U.S. Department of Veterans Affairs ("VA") unlawfully terminated her from her employment on July 28, 2008. Kurowski alleges that she was fired because of her disability in violation of the Rehabilitation Act, 29 U.S.C. 794(a) (Count I), because of retaliation for her request for an accommodation for her disability, also in violation of the Rehabilitation Act (Count II), and because of her sex in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2 (Count III). (Dkt. No 1 ("Compl.").) The VA now moves for summary judgment on all counts (Dkt. No. 27), and for the reasons stated below the motion is granted.

FACTUAL BACKGROUND

Irene Kurowski was employed full time by the Department of Veterans Affairs as a sales associate at a canteen in the Edward Hines, Jr. VA Hospital in Hines, Illinois beginning in 1988. (Dkt. No. 31 ("Pl.'s SMF") ¶ 1.) Her duties at the canteen included checking out customers and stocking merchandise (*Id.* ¶ 3), and her supervisors included Assistant Canteen Chief Debbie Siedschlag and Canteen Chief James Sipple (*Id.* ¶ 2).

Kurowski testified that she was diagnosed with osteoarthritis in both knees in 2007 (*Id.* ¶ 4), although her condition did not prevent her from performing her job duties without accommodation (Dkt. No. 29 ("Def.'s SMF") ¶ 52). On January 14, 2008, Kurowski underwent surgery on her right foot to correct four hammer toes. (Pl.'s SMF ¶ 5.) The VA approved leave under the Family Medical Leave Act from January 14 through April 14 to allow Kurowski to recover. (*Id.* ¶ 6.) Thereafter Kurowski's doctor allowed her to return to work, but recommended that she work only four to six hours per day, take breaks to elevate and ice her foot, and be provided a chair at her work station. (*Id.* ¶ 7.)

Because the canteen was under construction, Sipple could not provide Kurowski a chair at the cash register. Instead, Sipple placed a chair outside the canteen and allowed Kurowski to take breaks whenever necessary. (*Id.* ¶ 8; Def.'s SMF ¶ 26.) Kurowski testified that the standing caused her foot to be "very bothersome" and "very, very painful." (Dkt. No. 31, Ex. 20, at 103:19-104:1.) Also, although the first week back Kurowski worked only six-hour shifts, during the second week she returned to eight-hour shifts. (Pl.'s SMF ¶¶ 8, 14.) As a result, about a week after she started, she approached Sipple to ask for additional time off without pay to recover. (*Id.* at 104:20-105:14; *see also* Pl.'s SMF ¶ 9.)[1] According to Kurowski, Sipple denied the request for additional leave. (Pl.'s SMF ¶ 13.)

---

[1] The VA points out that Sipple does not recall this request, and that there is no medical documentation showing that it occurred. (Dkt. No. 41 (Def.'s Resp. Pl's SMF") ¶ 11.) Those facts do not constitute evidence refuting Kurowski's testimony, and her testimony is thus accepted as true. *See* L.R. 56.1(b)(3)(B).

Near the end of April 2008, Sipple proposed that Kurowski be transferred to the food court so she could have easier access to sitting breaks, and Kurowski accepted the transfer. (Def.'s SMF ¶ 32.) In the food court, Kurowski's duties included working as a cashier, stocking products, cleaning the customer service area, pushing carts, and wiping tables. (Pl.'s SMF ¶ 22.) While performing this work, Kurowski testified that she favored the foot which had not undergone surgery, causing her osteoarthritis to be aggravated. (*Id.* ¶ 23.) John Hardesty, Kurowski's supervisor at the food court (*Id.* ¶ 16), noted that Kurowski frequently complained about the pain while working, and that she walked with a cane because of the pain (*Id.* ¶ 27). According to Kurowski, Hardesty told her once that she looked like Charlie Chaplin when she walked with the cane. (Def.'s SMF ¶ 61.) Hardesty also testified at his deposition that he occasionally saw Kurowski walking briskly without a cane, "[a]lmost like Charlie Chaplain [sic] would." (Pl.'s SMF ¶ 27; *see also* Dkt. No. 29, Ex. G, at 20:17-24.)

On June 16, 2008, Kurowski called Hardesty and told him that she could not come to work because of storm damage to her condo. (Pl.'s SMF ¶¶ 30-32.) Specifically, she stated that she could not lock the door to her balcony because of the storm, and that she could not leave because workmen who were tuckpointing the building alongside the balcony would have access to her condo. (*Id.*) On June 27, 2008, Sipple issued Kurowski a notice indicating that he planned to terminate her for her failure to report to work on June 16, 2008. (*Id.* ¶ 38.) Kurowski was ultimately terminated by region manager Neil Toyne effective July 28, 2008, because of her absence on June 16 and her past disciplinary record. (*Id.* ¶ 39; Def.'s SMF ¶ 51.)

LEGAL STANDARD

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). When ruling on a motion for summary judgment, the court must consider the facts in the light most favorable to the nonmoving party, drawing all reasonable inferences in the nonmoving party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). The court does not make credibility determinations or weigh conflicting evidence. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010).

ANALYSIS

The Rehabilitation Act shields "a 'qualified individual with a disability' from discrimination solely because of his disability in any program receiving federal financial assistance." *Branham v. Snow*, 392 F.3d 896, 902 (7th Cir. 2004) (quoting 29 U.S.C. § 794(a)). To determine whether an individual suffered discrimination on the basis of her disability, the Rehabilitation Act applies the same standards as the Americans with Disabilities Act of 1990 ("ADA"). *Id.*[2] A claim under the Rehabilitation Act or the ADA requires the plaintiff to show,

---

[2] The ADA was significantly amended effective January 1, 2009. See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. These amendments do not apply retroactively,

among other things, that he "suffers from a disability as defined under the Act." *Branham*, 392 F.3d at 902 (citation and quotation marks omitted). A person with a disability is "any person who (i) has a mental or physical impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). Kurowski does not contend that she is disabled under 29 U.S.C. § 705(20)(B)(ii) or (iii), but instead focuses on (i).

The VA's summary judgment motion contends that, under subsection (i), Kurowski cannot bring forward sufficient evidence to allow a reasonable jury to conclude that she is disabled. *Stein v. Ashcroft*, 284 F.3d 721, 727 (7th Cir. 2002) ("It is the plaintiff's burden on summary judgment to demonstrate that he can come up with evidence to show he could meet his ultimate burden of showing a recognized disability." (citation, quotation marks, and alteration omitted)). Specifically, the VA notes that "[d]isability does not include temporary medical conditions." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999); *accord Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 544 (7th Cir. 1995) ("Intermittent, episodic impairments are not disabilities, the standard example being a broken leg."). Moreover, Kurowski testified that her foot was "pretty much healed" from surgery by September 2008, and was completely healed in March 2009. (Def.'s SMF ¶ 55.) Accordingly, the VA contends that Kurowski's foot condition was temporary and cannot constitute a disability.

---

however, and are thus not applicable to this case, in which the alleged violations predate January 1, 2009. *Hanson v. Caterpillar, Inc.*, 688 F.3d 816, 819 n.2 (7th Cir. 2012).

In response, Kurowski does not contend that her foot condition following surgery was a disability. (Dkt. No. 39, at 7-9.) Nor does she argue that her osteoarthritis prior to the surgery was a disability. Indeed, she admits that the osteoarthritis did not limit her ability to work.[3] (Def.'s SMF ¶ 52.) Kurowski asserts, however, that "her osteoarthritis, coupled with the failure to reasonably accommodate her related foot surgery, significantly affected her major life activities of walking and working." (*Id.* at 8.) In support of that theory, Kurowski relies on her testimony that the work she performed while recovering from her foot surgery caused her to favor one foot over the other, leading to a worsening of her osteoarthritis. (Pl.'s SMF ¶ 23.) It is this worsened osteoarthritis following the aggravation that Kurowski identifies as her disability.

For the osteoarthritis to constitute a disability, it must substantially limit one of Kurowski's major life activities. To meet that standard,

> the impairment must make the individual "unable to perform a major life activity that the average person in the general population can perform" or "significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the average person." An impairment need not cause an "utter inability" to perform the major life activity in order to constitute a substantial limitation on that activity.

*Branham*, 392 F.3d at 902 (citations and alterations omitted). In an attempt to meet that standard, Kurowski states in her response that, as a result of the aggravation of her osteoarthritis, she must

---

[3] *See Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 623 (7th Cir. 2012) ("[W]hen the major life activity of working is at issue, an individual must be regarded as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" (citation omitted)).

still walk with a cane and continues to receive medical treatment. To support that claim, she cites pages 148-158 and 179-181 of her deposition. (Dkt. No. 31, Ex. 20.) Kurowski does not state in her testimony on those pages that she still uses a cane, and does not address the long-term condition of her osteoarthritis except as follows:

> Q. And how about your osteoarthritis in your knees? How is the condition with that?
> A. It's painful, but it's manageable with medicine that I'm on. I'm too young. They wouldn't do a knee replacement. They told me I'm too young.
> Q. So you're taking medication for the osteoarthritis?
> A. Yes.
> Q. And that's effective?
> A. Yes.

(*Id.* at 180:17-181:1.) That testimony is plainly inadequate to establish that Kurowski's osteoarthritis, even after aggravation by her foot condition, was a disability under the Rehabilitation Act. Indeed, Kurowski's testimony tends to show the opposite. Kurowski stated that her condition is "manageable" and that medication is "effective."

Kurowski points to no other evidence to prove that, on a long-term basis, her osteoarthritis substantially limits a major life activity.[4] Moreover, the court "will not search the record in an attempt to make [Kurowski]'s arguments for her." *Stein*, 284 F.3d at 725. Accordingly, Kurowski has not met her burden on summary judgment of pointing to evidence adequate to show that she is

---

[4] Kurowski does point to evidence showing that she was in additional pain because of her osteoarthritis following her foot surgery, and that she needed assistance shopping and took fewer showers during that time. (Dkt. No. 31, Ex. 21, at 15-18; Dkt. No. 31, Ex. 20, at 148-158; Dkt. No. 39, at 3.) She does not, however, present any evidence that those conditions were more than temporary, or that the pain limited her ability to walk or to do her work. To the contrary, the evidence Kurowski cites indicates that she was able to perform her work duties even while her foot was still recovering, albeit with pain and some difficulty. (*See* Dkt. No. 31, Ex. 20, at 148:21-149:7; 149:12-150:1.)

disabled under the Rehabilitation Act. *Povey*, 697 F.3d at 624 ("Having failed to meet her burden

to demonstrate that she was disabled under the ADA, Povey is not protected by its provisions.").

II.     Retaliation under the Rehabilitation Act

Kurowski also alleges that she was terminated in retaliation for her requests for reasonable

accommodation under the Rehabilitation Act. It is well established that "[e]mployers are forbidden

from retaliating against employees who raise ADA claims regardless of whether the initial claims

of discrimination are meritless." *Povey*, 697 F.3d at 624 (citation and quotation marks omitted).

Kurowski attempts to establish retaliation under the direct method of proof, which requires her to

offer evidence that: "(1) she engaged in statutorily protected activity; (2) the defendant subjected

her to an adverse employment action; and (3) a causal connection existed between the two events."

*Id.* The only evidence that Kurowski offers of a causal connection between her requests for

accommodation and her termination is the timing of her firing, and her testimony that Hardesty

ridiculed her for her accommodation requests by comparing her to Charlie Chaplin, an actor in

silent movies with a distinctive walking style. (Def.'s SMF ¶ 61; Dkt. No. 39, at 12.) The

proximity of Kurowski's firing to her requests for accommodation, by itself, "is not sufficient to

create a genuine issue of material fact to support a retaliation claim." *Povey*, 697 F.3d at 624.

Hardesty's comment about Charlie Chaplin is also insufficient because Toyne, not Hardesty, made

the decision to terminate Kurowski. Kurowski presents no evidence showing that Hardesty's

animus toward her, which the court infers in Kurowski's favor, can be attributed to Toyne.[5]

_____

[5] Kurowski also contends that Sipple's denial of her request for leave, his decision to
transfer her to the food court, and his denial of her request to work 4-6 hour shifts constitute

Kurowski thus has not presented sufficient evidence supporting her retaliation claim to survive summary judgment.

III.      Gender Discrimination

Finally, Kurowski does not present any evidence or argument regarding her gender discrimination claim in her response to the VA's summary judgment motion. (Dkt. No. 39.) The court will deem that claim abandoned. *See Palmer v. Marion Cnty.*, 327 F.3d 588, 597-98 (7th Cir. 2003) ("[B]ecause Palmer failed to delineate his negligence claim in his district court brief in opposition to summary judgment or in his brief to this Court, his negligence claim is deemed abandoned.")[6]

CONCLUSION

For the reasons explained above, the VA's motion for summary judgment (Dkt. No. 27) is granted. Judgment in favor of the VA is entered on all counts of Kurowski's complaint. Civil Case Terminated.

ENTER:

*James F. Holderman*
_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: April 5, 2013

_____

adverse employment actions. There is no evidence that any of those decisions can be attributed to Hardesty's alleged animus either.

[6] Kurowski does present argument relative to a claim of race discrimination. (Dkt. No. 39, at 12-13.) She did not allege, however, that she was improperly fired on the basis of her race, and no such claim is currently pending before the court. (*See* Compl.)